```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION
```

Republic Technologies (NA), LLC, and  )
Republic Tobacco, L.P.,                )
                                       )
          Plaintiffs,                  )
    v.                                 )    No. 16-cv-3401
                                       )
BBK Tobacco & Foods, LLP d/b/a HBI     )
International,                         )
                                       )
          Defendant.                   )
---------------------------            )
BBK Tobacco & Foods, LLP d/b/a HBI     )
International,                         )
                                       )
    Counter-Plaintiffs,                )
                                       )
    v.                                 )
                                       )
Republic Technologies (NA), LLC,       )
Republic Tobacco, L.P., and Vanilla    )
LA Group, Inc.,                        )
                                       )
    Counter-Defendants.                )

## Memorandum Opinion and Order

Before me is counter-defendant Vanilla LA Group, Inc.'s ("VLA") motion to dismiss counter-plaintiff/defendant BBK Tobacco & Foods, LLP, d/b/a HBI International's ("HBI") counterclaims for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the following reasons, I deny VLA's motion.

I.

This case involves a trademark dispute between cigarette rolling paper distributors. At bottom, the dispute centers around HBI's claim that Republic Technologies (NA), LLC, and Republic Tobacco, L.P. (collectively "Republic" or "plaintiffs") and VLA's packaging and advertising for their "Organic Hemp" OCB branded rolling papers mimic HBI's trade dress for its RAW brand of rolling papers.

The matter arrived in this court when Republic, an Illinois corporation, filed a complaint against HBI, an Arizona corporation, seeking a declaratory judgment that Republic's OCB products did not infringe any of HBI's trademark rights. Republic later amended its complaint, adding claims for unfair competition and trademark cancellation under the Lanham Act, deceptive trade practices under Illinois law, and common law unfair competition. HBI countersued, claiming that Republic committed copyright and trademark infringement, engaged in deceptive trade practices and unfair competition, and falsely advertised and designated the origin of its products.[1]

HBI subsequently added counterclaims against VLA, a Republic customer and distributor of the OCB rolling paper product line. According to HBI's second amended counterclaims,

---

[1] HBI later added a claim for trademark cancellation, which I dismissed in an order dated July 26, 2017.

2

VLA is a California corporation with its principal place of business in Los Angeles. 2d Am. Countercl. ¶ 6. HBI alleges "[o]n information and belief" that VLA is "either the exclusive or primary promoter and distributor of OCB brand rolling papers in the United States." *Id.* ¶ 76. In its pleadings, HBI claims that VLA and Republic have sold and/or currently sell OCB organic hemp rolling papers in packaging that is confusingly similar to HBI's RAW trade dress. *Id.* ¶¶ 49-62. HBI also alleges that the in-store displays that Republic and VLA use to advertise their products are confusingly similar to those used by HBI. *Id.* ¶¶ 63-67. According to HBI, by marketing and selling these OCB branded products to retailers throughout the country, VLA has infringed on HBI's trademarks and copyrights and engaged in deceptive and unfair business practices under the Lanham Act and Illinois law.

With respect to jurisdiction, HBI alleges that VLA "does business in [the Northern District of Illinois] through, at minimum, its contractual relationship with Republic, which resides in [the] District, with respect to the distribution and sale of OCB brand rolling papers" and through its "distribution of rolling papers in [the] District." *Id.* ¶ 10. HBI further alleges that VLA markets OCB products to a national market through its website (www.rollocb.com). *Id.* ¶¶ 77-79. On its website, VLA lists stores selling OCB products throughout the

United States, including thirty-three stores in Illinois, and it provides wholesale purchase information and contact information to retailers and distributors. Colvard Decl. ¶¶ 11-21.

In deposition testimony given on June 9, 2017, Guy Matalon, one of VLA's two principals, admitted that VLA's business is not limited to a single geographic area. Matalon Dep. at 32. He testified, "Whoever wants to buy, I sell to." *Id.* Matalon explained that VLA connects with customers through store visits, the VLA website, and trade shows. *Id.* at 38-39. He admitted that VLA sells to at least one Illinois distributor an average of three to four thousand dollars of merchandise annually. *Id.* at 40, 117. At the deposition, Matalon also produced fourteen invoices for $5,056.50 in sales made to thirteen different Illinois retailers between 2014 and 2016. HBI's Opp., Exh. 4 [ECF No. 136-3]. At least nine of these invoices include shipping information, and eleven include OCB organic hemp products, point of sale items, or both. *Id.* In his testimony, Matalon confirmed that these invoices reflect orders from Illinois retailers for which payment was received. Matalon Dep. at 117-18, 121-23. Matalon also testified about VLA's relationship with Republic. He discussed a 2014 meeting he attended at Republic's offices in Glenview, Illinois, *Id.* at 71-72; VLA's input on point of sale item designs, *Id.* at 41-42; and

VLA's agreement with Republic regarding VLA's use of the OCB trademark. *Id.* at 129-30.

II.

It is the plaintiff's (or, in this case, the counter-plaintiff's) burden to establish that this court has personal jurisdiction over the defendant, and "where, as here, the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). I therefore "take as true all well-pleaded facts alleged in the [counterclaims] and resolve any factual disputes in the affidavits [or other evidence] in favor of the [counter-] plaintiff." *Id.*

A federal court may exercise personal jurisdiction over a defendant in a federal question case "if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010); *see* Fed. R. Civ. P. 4(k)(1). Because the federal statutes that HBI brings suit under – the Copyright Act, 17 U.S.C. § 101 *et seq.*, and the Lanham Act, 15 U.S.C. § 1051 *et seq.* – do not authorize nationwide service of process, I may only exercise jurisdiction over Vanilla LA "to the extent

5

that a court of general jurisdiction in Illinois could." *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 756 (7th Cir. 2010); *see also MG Design Assocs., Corp. v. Costar Realty Info., Inc.*, 224 F. Supp. 3d 621, 628 (N.D. Ill. 2016) (Copyright Act does not authorize nationwide service); *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 191 F. Supp. 3d 790, 798 (N.D. Ill. 2016) (Lanham Act does not authorize nationwide service). To determine whether an Illinois court could exercise jurisdiction, I look to the applicable state statute and the federal Constitution. *Tamburo*, 601 F.3d at 700. The Illinois long-arm statute permits the exercise of jurisdiction to the limits set by the Fourteenth Amendment's Due Process Clause,[2] so "the state statutory and federal constitutional inquiries merge." *Id.* (citing 735 ILCS § 5/2-209(c)); *see also Noboa v. Barceló Corporación Empresarial, SA*, 812 F.3d 571, 572 (7th Cir. 2016).

The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonconsenting, out-of-state defendant where "the defendant has certain minimum

---

[2] The Illinois jurisdictional statute reads: "A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS § 5/2-209(c). Although the statute refers to both the Illinois and U.S. Constitutions, the Seventh Circuit has repeatedly noted that there is "no operative difference" between the state and federal constitutional limits on personal jurisdiction. *Mobile Anesthesiologists*, 623 F.3d 440 at 443.

6

contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. ___, 134 S. Ct. 746, 754 (2014) (internal quotations omitted). The defendant must have "purposely established minimum contacts with the forum state such that [it] should reasonably anticipate being haled into court there." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (internal quotations omitted).

"Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts." *Mobile Anesthesiologists*, 623 F.3d at 444. "General jurisdiction is 'all-purpose'; it exists only 'when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State.'" *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 697–98 (7th Cir. 2015) (quoting *Daimler AG*, 134 S. Ct. at 751). Specific jurisdiction, on the other hand, "is case-specific; the claim must be linked to the activities or contacts with the forum." *Id.* at 698.

Counter-plaintiff HBI asserts that this court may exercise specific jurisdiction over VLA because of its case-related contacts with the state of Illinois. Because HBI does not argue that general jurisdiction exists – and, indeed, it appears that it likely does not – I only address specific jurisdiction.

7

For a court to exercise specific jurisdiction over a defendant, there are "three essential requirements" that must be met:

> (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state, (2) the alleged injury must have arisen from the defendant's forum-related activities, and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice.

*Felland*, 682 F.3d at 673 (internal citations omitted). In conducting this analysis, courts look to a defendant's contacts "that center on the relations among the defendant, the forum, and the litigation." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014). "[T]he relation between the defendant and the forum must arise out of contacts that the defendant *himself* creates with the forum...." *Id.* (internal quotations omitted).

A. Purposeful Availment/Purposeful Direction

The purposeful availment/direction inquiry essentially asks whether VLA "has purposely exploited the Illinois market." *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011).[3] VLA argues

---

[3] Although HBI alleges intentional torts, it is unnecessary to "delve into the intricacies of [the Supreme Court's] 'express aiming' test" where a defendant's "actual (as opposed to imputed) contacts with [the forum state] are sufficient to support the exercise of specific personal jurisdiction." *Virgin Enterprises Ltd. v. Jai Mundi, Inc.*, 2014 WL 3605541, at *5 (citing *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 427 n.1

8

that it has not. Offering supporting affidavits from its two principals, VLA contends that: it does not aim commercial activity toward or transact business in Illinois; it has no employees or offices in the state; it is not licensed to do business in Illinois; and it does not send sales staff to or promote its products in Illinois. Zohar Decl. ¶ 3; Matalon Decl. ¶¶ 7-8. In response, HBI argues that VLA may be subjected to this court's jurisdiction because of its close relationship with Republic, an Illinois-based corporation; its marketing and sale of the allegedly infringing materials throughout the U.S. market, including in Illinois; its direct sale of OCB merchandise to Illinois retailers; and its promotion of its Illinois customers to the Illinois market through its website's store locator function.

I am not convinced that VLA's relationship with Republic is sufficient, as HBI argues, to bring VLA under this court's jurisdiction. It is the plaintiff's contacts with the forum – not a third party's contacts – that establish minimum

---

(7th Cir. 2010)); *see also Mobile Anesthesiologists,* 623 F.3d at 445 ("[The] express aiming [test is] merely one means of satisfying the traditional due process standard set out in *International Shoe* and its familiar progeny."); *Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC,* No. 10-CV-4535, 2010 WL 4877708, at *6 (N.D. Ill. Nov. 23, 2010) (concluding that "express aiming test" did not apply because defendant held "itself out as open for business to Illinois consumers and *did in fact* affirmatively conduct business in Illinois") (emphasis in original).

contacts. *Walden*, 134 S. Ct. at 1122. HBI's infringement, unfair competition, and deceptive practices claims against VLA do not arise from any contract existing between VLA and Republic. The business relationship between the two companies is certainly related to the suit, but it is not central to the claims against VLA. Thus, Matalon's 2014 meeting, the 2011 agreement between Republic and VLA, and other details relating to their business relationship are not the sorts of contacts needed to show a connection between "the defendant, the forum, and the litigation." *Advanced Tactical*, 751 F.3d at 801.

VLA's other contacts with Illinois, however, are sufficient to satisfy the purposeful availment/direction inquiry. The Seventh Circuit's decision in *Illinois v. Hemi Group, LLC*, 622 F.3d 754 (7th Cir. 2010), is instructive here. In that case, Hemi Group, a New Mexico corporation, was haled into an Illinois court on claims related to around three hundred packs of cigarettes it sold to an Illinois Department of Revenue agent through its online store, which advertised its products to every U.S. state except New York. *Id.* at 755. Similar to VLA, Hemi Group argued that it was not registered to do business in Illinois, nor did it have employees or offices in the state. *Id.* at 756. Nevertheless, the Seventh Circuit affirmed the district court's exercise of specific jurisdiction because, through its website, the defendant "held itself out as open to

10

do business with every state (including Illinois) except New York" and, in fact, "shipped the cigarettes to their various destinations," including Illinois, to fulfill customer orders. *Id.* at 758. The Seventh Circuit rejected Hemi Group's argument that the cigarette purchases "were unilateral actions by the customers," and concluded that Hemi Group's own actions leading up to and following the sales demonstrated that it had reached out to the residents of Illinois enough to create sufficient minimum contacts with the forum. *Id.* That Hemi Group only delivered around three hundred packs of cigarettes into Illinois was not dispositive.[4]

---

[4] Following *Hemi Group*, courts in this district have similarly held that a defendant's sale of infringing products – even if a small number – to Illinois residents can be enough to satisfy the minimum contacts test. *See Valtech, LLC v. 18th Ave. Toys Ltd.*, No. 14 C 134, 2015 WL 603854, at *4 (N.D. Ill. Feb. 12, 2015) ("Although Defendants' sales in Illinois are very minimal in comparison to overall sales, these sales to Illinois residents still occurred, each resulting in an alleged intentional tort."); *Virgin Enterprises Ltd. v. Jai Mundi, Inc.*, No. 13 C 8339, 2014 WL 3605541, at *4 (N.D. Ill. July 18, 2014) ("*Hemi* also shows that the precise dollar value of [the defendant's] sales to Illinois customers — either as an absolute number or as a percentage of the company's total sales — is not dispositive for purposes of determining whether specific personal jurisdiction exists."); *Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC*, No. 10-CV-4535, 2010 WL 4877708, at *7 (N.D. Ill. Nov. 23, 2010) ("Each time that Defendant used its allegedly-confusing name in Illinois a tortious act allegedly was committed. As long as one tortious act is committed in Illinois, the courts of the state, and thus this Court, may exercise personal jurisdiction over Defendant."); *see also Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 906 (N.D. Ill. 2015) (concluding that offers to sell infringing

Similar to Hemi Group, VLA made actual sales and deliveries of the allegedly infringing OCB branded products to Illinois retailers. Indeed, as the invoices produced at Matalon's deposition demonstrate, VLA sold at least $5,056.50 of merchandise, including OCB organic hemp rolling papers, to thirteen Illinois retailers between 2014 and 2016. HBI's Opp., Exh. 4 [ECF No. 136-3]. Some of these purchases, as VLA points out, may have occurred at trade shows in other states. But VLA admits that it fulfilled subsequent orders placed by Illinois retailers. VLA's Reply at 8. Furthermore, the invoices suggest that VLA shipped OCB products to these retailers in Illinois. HBI's Opp., Exh. 4 [ECF No. 136-3]. In his deposition testimony, Matalon also estimated that VLA averages about three to four thousand dollars in annual sales to an Illinois-based distributor. Matalon Dep. at 117. Despite VLA's denials of doing business in Illinois, HBI's supporting documents show that VLA has knowingly sold its products to Illinois residents and, consequently, has purposefully directed its activities toward the Illinois market. *See Hemi Group*, 622 F.3d at 758; *Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC,* No. 10-CV-4535, 2010 WL 4877708, at *7 (N.D. Ill. Nov. 23, 2010).

---

products to Illinois residents were sufficient to establish minimum contacts).

VLA argues that its sales to the Illinois market are too insignificant in comparison to its total sales to merit the exercise of personal jurisdiction. But, as *Hemi Group* demonstrated, the actual or relative volume of sales to the Illinois market is not dispositive, so long as those sales were directed at Illinois customers and involve the challenged conduct. *Hemi Grp.*, 622 F.3d at 755, 758; *see also Virgin Enters. Ltd. v. Jai Mundi, Inc.*, No. 13 C 8339, 2014 WL 3605541, at *4 (N.D. Ill. July 18, 2014); *Dental Arts Lab.*, 2010 WL 4877708, at *7.

VLA, like Hemi Group, has also held itself out as selling to the national market. On its website, VLA states that it is a "distributor[] of OCB products in the American market" with products available in "100s of stores throughout the U.S.A." Colvard Decl. ¶¶ 12-15. VLA invites retailers to view its wholesale catalog, add their stores to the website's store locator, and contact VLA through the website or by telephone.[5] *Id.* ¶¶ 10-11, 16-21. VLA's store locator identifies thirty-three stores in Illinois selling its OCB branded products. *Id.* ¶ 19; *see Virgin Enters.*, 2014 WL 3605541, at *4 ("The listing of five or six Illinois stores on [defendant's] website provides an even stronger basis for asserting specific

---

[5] In his deposition testimony, Matalon confirmed that Illinois retailers could place orders with VLA by calling or emailing the company through the website. Matalon Dep. at 51, 117-18.

personal jurisdiction."). In short, VLA's website suggests that it is open to selling its products anywhere in the United States, including in Illinois. Matalon confirmed this in his deposition when he stated, "I buy and I sell. Whoever wants to buy, I sell to." Matalon Dep. at 32. By holding itself out as selling to the national market, VLA indicated that it is "ready and willing to do business with Illinois residents." *Hemi Grp.*, 622 F.3d at 758; *Dental Arts Lab.*, 2010 WL 4877708, at *6.

VLA contends that its passive website cannot support specific jurisdiction because it is not used for actual commerce. It is true that the website here does not involve an online store like that in *Hemi Group*. But this fact does not make VLA's online presence irrelevant to the minimum contacts analysis. While maintenance of a passive website alone is not enough to establish jurisdiction, *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004), VLA's online marketing to the U.S. market, its online promotion of OCB brand retailers in Illinois, and its invitation to retailers to contact VLA via its website or telephone demonstrate that VLA held "itself out as open to sell its wares to residents of any state in the nation." *Dental Arts Lab.*, 2010 WL 4877708, at *6. That VLA was ready and willing to do business in Illinois, and, in fact, did so through its sales to Illinois retailers, is enough to satisfy the purposeful direction/availment inquiry. *Hemi Grp.*, 622 F.3d at

757-58; *Virgin Enters.*, 2014 WL 3605541, at *4-5; *Dental Arts Lab.*, 2010 WL 4877708, at *4-6.

B. Relatedness

"[S]pecific jurisdiction requires that the defendant's contacts with the forum state relate to the challenged conduct." *Felland*, 682 F.3d at 673. In other words, the plaintiff's claims must "arise out of or be related to [the defendant's] minimum contacts with the forum." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997).

According to VLA, HBI fails to allege that VLA had any material involvement in the conduct giving rise to the suit or that VLA engaged in any of the challenged conduct in Illinois. VLA insists that its sales of "a few thousand dollars' worth of merchandise" to Illinois retailers have "little relevance" to the claims that HBI has raised against it. VLA's Reply at 9.

VLA ignores, however, that many of the sales it made to Illinois retailers included the very OCB hemp rolling papers that allegedly infringed HBI's trademarks. The invoices produced at Matalon's deposition indicate that OCB organic hemp products were purchased by and shipped to Illinois retailers on several occasions. HBI's Opp., Exh. 4 [ECF No. 136-3]. Because VLA's sales to the Illinois market involved the OCB organic hemp products, its "forum contacts and its allegedly infringing activities are one and the same." *Virgin Enters.*, 2014 WL

3605541, at *5; *Dental Arts Lab.*, 2010 WL 4877708, at *4 ("The Court finds that it has specific jurisdiction over Defendant because Defendant's admitted contacts with Illinois (selling of its products to Illinois dentists under an allegedly-confusing name) are the very tortious acts of which Plaintiff complains."). Like the claims in *Hemi Group*, HBI's infringement claims are therefore sufficiently related to VLA's contacts with Illinois.[6]

C. Fairness

Finally, the exercise of jurisdiction over VLA is only proper if it "does not offend traditional notions of fair play and substantial justice." *Hemi*, 622 F.3d at 759. To satisfy this inquiry, courts evaluate:

> [T]he burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute], and the shared interest of the several States in furthering fundamental substantive social policies.

---

[6] It should be noted that this case is different from *Advanced Tactical*, 751 F.3d 796 (7th Cir. 2014), where the Seventh Circuit held that personal jurisdiction did not exist over a defendant even though it sent a few orders into the forum state while an allegedly infringing message appeared on its website. The court in *Advanced Tactical* concluded that the plaintiff had not established a connection between the fulfilled orders and the litigation. 751 F.3d at 801. Here, however, VLA's own invoices show that VLA sent the OCB products with which this lawsuit is concerned to Illinois retailers.

16

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781 (7th Cir. 2003). "These factors rarely will justify a determination against personal jurisdiction." *Id.* at 781 n.10.

Although VLA contends that this litigation is taxing on its business, it has not identified any specific reasons – besides the distance from California and its lack of offices in Illinois – that defending the case in the Northern District of Illinois is especially burdensome. Meanwhile, the efficiency gained by litigating these matters together will benefit HBI and the interstate justice system alike. It is also reasonable to assume that the state of Illinois has an interest in seeing this trademark dispute involving sales to the Illinois market adjudicated in Illinois. While VLA understandably would prefer to litigate these matters in its home state, if at all, that alone is not enough to prevent the exercise of personal jurisdiction, especially when the other fairness factors weigh in favor of exercising personal jurisdiction, as they do here.

### III.

For the foregoing reasons, counter-defendant Vanilla LA's motion to dismiss for lack of personal jurisdiction is denied.

**ENTER ORDER:**

Dated: August 7, 2017

Elaine E. Bucklo
U.S. District Judge

17