# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| REPUBLIC TECHNOLOGIES (NA), LLC and REPUBLIC TOBACCO, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> BBK TOBACCO & FOODS, LLP d/b/a HBI INTERNATIONAL, <br><br> Defendant. <br><br> ─────────────────── <br> BBK TOBACCO & FOODS, LLP d/b/a HBI INTERNATIONAL, <br><br> Counter-Plaintiff, <br><br> v. <br><br> REPUBLIC TECHNOLOGIES (NA), LLC, REPUBLIC TOBACCO, L.P., and VANILLA LA GROUP, INC., <br><br> Counter-Defendants. | No. 16 C 3401 <br><br> Magistrate Judge Sidney I. Schenkier |

## MEMORANDUM OPINION AND ORDER

Republic Technologies (NA), LLC, and Republic Tobacco, L.P. (collectively "Republic") have sued HBI International ("HBI") seeking, among other things, declarations that: (1) HBI does not have protectable intellectual property rights in the trademark RAW or the trade dress for the packaging of its RAW rolling papers; and (2) Republic's "Organic Hemp" OCB branded rolling papers products do not infringe any rights HBI has in its RAW trade dress, trademarks and copyrights (doc. # 47: Second Am. Compl., at ¶¶ 60-67). HBI now seeks to compel Republic to produce documents that are held by an affiliate of Republic that is located in France and that relate to Republic's design and packaging of its OCB organic hemp products. Republic has

refused to produce these documents on the grounds that it does not have possession, custody or control of documents in France, and that French law prohibits the discovery HBI seeks (doc. # 203: 9/18/2017 Joint Stmt. at 7).

This case was referred to this Court for discovery supervision, including HBI's motion to compel Republic's production of these documents (doc. # 185). The Court ordered the parties to meet and confer, and if they were unable to reach agreement, to file a joint statement stating each side's position with supporting evidence and legal authority (doc. # 196). The parties have now filed their joint statement setting forth their opposing arguments (doc. # 203). For the reasons that follow, we hold that Republic must produce documents in the possession of its French affiliate.

**I.**

At the threshold, this Court must determine whether French law actually bars the production at issue. *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 541 (N.D. Ill. 2004). It is Republic's burden, as the party relying on foreign law to block production, to "provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law." *Id.*

Article 1A of the French law that allegedly prohibits production (the "blocking statute"), French Penal Code Law No. 80-538, provides:

> Subject to treaties or international agreements and applicable laws and regulations, it is prohibited for any party to request, seek or disclose, in writing, orally or otherwise, economic, commercial, industrial, financial or technical documents or information leading to the constitution of evidence with a view to foreign judicial or administrative proceedings or in connection therewith.

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 526 n.6 (1987). On its face, this French law does appear to prohibit Republic's French entity

from providing the discovery HBI seeks -- although, as we discuss below, there is evidence that the blocking statute is not as "blocking" as it may appear at first blush.

However, while this potential conflict with French law requires this Court to consider principles of international comity before compelling production from France, the French blocking statute "do[es] not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Aerospatiale*, 482 U.S. at 544 n.29. Furthermore, contrary to Republic's argument (Jt. Stmt. at 9), the procedures of the Hague Convention are not "mandatory" for seeking discovery located in a foreign country; rather, the Hague Convention "is one method of seeking evidence that a court may elect to employ." *Aerospatiale*, 482 U.S. at 541. While HBI apparently considered using the Hague Convention to obtain this discovery (Jt. Stmt. at 9-10), HBI did not violate any rules by instead choosing to proceed in United States federal court in an effort to compel production through the Federal Rules of Civil Procedure.

Because there is no dispute that Republic is subject to this Court's jurisdiction, we proceed to the questions of whether the federal rules permit the discovery HBI seeks, and what impact principles of international comity have on HBI's discovery requests.

## II.

Republic may be compelled to produce the documents physically located in France if the documents nonetheless within Republic's "control." Fed. R. Civ. P. 34(a)(1). If Republic has control over the documents, "[t]he location of the documents is irrelevant." *Dexia*, 231 F.R.D. at 541 (quoting *In re Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1144 (N.D. Ill. 1979)). "On the issue of control, it is well-settled that a party need not have actual possession of the documents to be deemed in control of them; rather, the test is whether the party has a legal right to obtain

them." *Dexia*, 231 F.R.D. at 542 (internal quotations and citations omitted). *See also Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Engineers, Inc.*, 755 F.3d 832, 838-39 (7th Cir. 2014) (citing test for control in *Dexia*). "The fact that a party could obtain a document if it tried hard enough . . . does not mean that the document is in its possession, custody, or control;" rather, the party must be able to order the company to surrender the documents. *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1426-27 (7th Cir. 1993).

In his deposition, Republic's general counsel, Seth Gold, testified that Republic Technologies International, which is located in France, is 100 percent owned by Republic Technologies in Glenview "[e]ither directly or through a holding company" (Jt. Stmt., Ex. B: Gold Dep. at 13). Mr. Gold reiterated this answer, stating that it was "correct" that Republic Technologies in Glenview either directly or indirectly has 100 percent ownership of Republic Technologies International (*Id.* at 14, 166). In response to HBI counsel's question of whether Republic Technologies in Glenview "controls" Republic Technologies International in France, Mr. Gold stated that: "It does and it doesn't. It's a French company, so they have slightly different rules. And it acts through French officers" (*Id.* at 13).

Based on Mr. Gold's testimony, HBI contends that Republic is the 100 percent owner of Republic Technologies International (the "French subsidiary") (Jt. Stmt. at 5). Republic argues that this conclusion "stretches the testimony of Republic's general counsel on the subject" (*Id.* at 13), but we have read the deposition excerpts attached to the parties' joint statement, and we do not see the "stretch[ing]" that Republic suggests. Mr. Gold stated that Republic *does* own 100 percent -- "either directly or indirectly" -- of the French subsidiary. Moreover, the French subsidiary manufactures the OCB organic hemp cigarette papers, and the packaging for OCB organic hemp cigarette papers was derived from the packaging and design created and used by

4

the French subsidiary (Jt. Stmt., Ex. A: Republic's Ans. to Interrogs. Nos. 1, 7). And, as HBI notes, Republic controls the licensing of the OCB trademark to the French subsidiary (Jt. Stmt. at 5). From this evidence, HBI argues that Republic has sufficient control over its French subsidiary to obtain documents from it (*Id.*).

Republic disputes that this is enough to show that it controls the documents in possession of its French subsidiary. Republic argues that to show control, HBI must present evidence that Republic and its French subsidiary have interlocking management structures, that Republic controls the French officers, or that Republic maintains the documents in the ordinary course of business (Jt. Stmt. at 12-13). Republic relies on a test set forth in *Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, No. 07-CV-6509, 2009 WL 780890, at *2 (N.D. Ill. Mar. 23, 2009), which stated that a sufficiently close corporate relationship in which *a subsidiary has the power to produce documents held by the parent* may be evidenced by: "(1) adequate ownership share in the subsidiary by the parent; (2) interlocking management structures; (3) sufficient control exercised by the foreign parent over the subsidiary's directors, officers, and employees; and (4) a connection to the transaction at issue." However, the question of whether a subsidiary exercises sufficient control over a parent is a very different question from whether the parent exercises sufficient control over its subsidiary. Indeed, in the other case Republic found to have applied a similar test to that in *Stella*, the court ordered the parent company to produce documents in the possession of its wholly owned subsidiary. *See Wachovia Sec., LLC v. Loop Corp.*, No. 05 C 3788, 2008 WL 2625907, at *2 (N.D. Ill. June 27, 2008).

In this case, the evidence persuades us that Republic has a legal right to obtain documents from the French subsidiary. Republic owns 100 percent of its French subsidiary (directly or indirectly), Republic controls the licensing of the relevant trademark to its French subsidiary, and

the French subsidiary shares "some common owners" with Republic (*see* Republic's Ans. to Interrogs. at No. 7). Moreover, Republic has offered to "work with [the French subsidiary] to obtain the information" HBI seeks (Jt. Stmt., Ex. D), which further suggests that Republic has a legal right to obtain that discovery from the French subsidiary.[1]

Moreover, Republic may not condition its French production on HBI's agreement to produce other documents. If Republic has a legal right to obtain the documents located at its subsidiary in France, and those documents are relevant, then Republic must produce this discovery to HBI. *See SRAM, LLC v. Hayes Bicycle Grp., Inc.*, No. 12 C 3629, 2013 WL 6490252, at *4 (N.D. Ill. Dec. 10, 2013) (holding that a party had to produce information from a third party company located overseas where the two companies shared officers and directors and had interrelated corporate structures); *Pine Top Receivables of Illinois, LLC v. Banco De Seguros Del Estado*, No. 12 C 6357, 2013 WL 3776971, at *3 (N.D. Ill. July 18, 2013) (ordering a party to produce records in the possession of a third party where the party had a contractual right to access those records). While compromise in discovery disputes is encouraged and may lead to sensible "horse trading" that resolves the disputes, once a matter is presented to the Court for ruling, that kind of deal making falls out of the picture.

Here, there is unquestionably a relevant connection between the discovery sought and the claims at issue. Republic admits that the discovery sought relates to HBI's trade dress counterclaims in which HBI asserts that Republic's OCB organic hemp packages are confusingly similar to HBI's RAW organic hemp products (Joint Stmt. at 3). Indeed, it is Republic that

---

[1] Republic notes that its suggestions of a *quid pro quo* -- that it could endeavor to obtain documents from its French subsidiary if HBI sought to obtain and produce documents from foreign entities -- was not presented as a promise that Republic could in fact obtain the documents (Jt. Stmt., Ex. D). However, we find it implausible that Republic would repeatedly propose this *quid pro quo* over a two-month period without being assured that it could obtain the documents irrespective of what the French subsidiary may wish. We therefore find that this evidence supports the proposition that Republic has control over the documents being sought.

6

injected the documents held by the French subsidiary into the case, by stating in an interrogatory response that the packaging and design which HBI alleges infringes its trade dress were not based on HBI's products but instead were "derived from the packaging independently created for OCB organic hemp cigarette papers already being sold in Europe," which are "the origin and conceptual basis for the OCB organic hemp cigarette paper packaging, advertising and signage at issue here" (Republic's Ans. to Interrogs. at No. 7). By the same token, the discovery is relevant to Republic's claim seeking a declaration that its packaging does not infringe on any of HBI's trade dress. Thus, we find that pursuant to the federal rules of discovery, the information sought by HBI is relevant and that Republic has a legal right to obtain that information if it is held by Republic's subsidiary in France.

### III.

Because a potential conflict with French law exists, we must address concerns of international comity before deciding whether to order the production of any discovery located in France. Courts look to the Restatement (Third) of Foreign Relations Law of the United States Section 442 when considering factors relevant to the comity analysis. *See, e.g., Aerospatiale*, 482 U.S. at 544 n.28 (citing forerunner of this provision, Section 437). Section 442(1)(c) states:

> In deciding whether to issue an order directing production of information located abroad, and in framing such an order, a court or agency in the United States should take into account the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

Consideration of these factors weighs in favor of ordering production of the documents. Republic has not suggested that the information that HBI seeks from the French subsidiary is

available from any other source. Although the information on the packaging and design of OCB organic hemp cigarette papers originated in France, it is clearly important to the litigation over the trade dress of these cigarette papers, both in Republic's claim for declaratory relief and HBI's counterclaim for trade dress infringement. Republic attempts to dispute the importance of this information by stating that the district court judge has expressed "skepticism that HBI could ever make out a claim of confusion" as required to establish trade dress confusion (9/18/2017 Joint Stmt. at 9). However, the district court has not dismissed the trade dress claim, and the ultimate issue of infringement is not before this Court. Our role is to allow the discovery process to proceed in a fair way to allow both parties to present evidence of their claims and defenses to the finder of fact.

Most importantly to the comity analysis, the interests of the United States that are at issue are far more important than any interest that France has in prohibiting production of the documents. "The blocking statute [] is relevant to the court's particularized comity analysis only to the extent that its terms and its enforcement identify the nature of the sovereign interests in nondisclosure of specific kinds of material." *Aerospatiale*, 482 U.S. at 544 n.29. France's interests in nondisclosure of the specific kinds of material at issue here are not strong. Although Republic has not presented any evidence of the nature of France's sovereign interests here, cases in this Circuit have not found France's sovereign interest in its blocking statute to be compelling.

The French blocking statute "was originally created to block United States antitrust laws and it has not been strictly enforced in France." *In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 310 (N.D. Ill. 1997) (citing *Aerospatiale*, 482 U.S. at 525, 527). The Seventh Circuit has contrasted the French blocking statute with a Romanian law that aimed at protecting that nation's secrets. While Romania's interest in its law may be more compelling

than the American interest in enforcing its judicial decisions, the French blocking statute was not aimed at "protecting [the] state," but at "merely protecting [French] corporations from foreign discovery requests." *Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat (Admin. of State Ins.)*, 902 F.2d 1275, 1280 (7th Cir. 1990) (comparing the Romanian law with *Compagnie Francaise D'Assurance v. Phillips Petroleum Co.*, 105 F.R.D. 16, 30 (S.D.N.Y. 1984) (stating that the French blocking statute was "never expected nor intended to be enforced against French subjects but was intended rather to provide them with tactical weapons and bargaining chips in foreign courts"); *Graco, Inc. v. Kremlin, Inc.*, 101 F.R.D. 503, 508 (N.D. Ill. 1984) (stating that "[t]he Blocking Statute obviously is a manifestation of French displeasure with American pre-trial discovery procedures")). And, it strikes us that France's interest in protecting its corporations from foreign discovery has diminished weight when, as here, the French corporation is a subsidiary of a United States company. There is no evidence that France's interest in its blocking statute has changed or that France has become more vigorous in enforcing its blocking statute in recent years.

By contrast, "the courts of the United States undoubtedly have a vital interest in providing a forum for the final resolution of disputes and for enforcing these judgments." *Reinsurance*, 902 F.2d at 1280. In this case, Republic has submitted a sworn assertion that its packaging for OCB organic hemp cigarette papers was not stolen from HBI, but obtained from the French subsidiary, which "independently created for OCB organic hemp cigarette papers already being sold in Europe," and was "the origin and conceptual basis for the OCB organic hemp cigarette paper packaging, advertising and signage at issue here" (Republic's Ans. to Interrog. No. 7). HBI has an obvious interest in obtaining documents that bear on this issue, and the United States also "has its own sovereign interest in protecting its citizens." *In re Aircrash*

*Disaster*, 172 F.R.D. at 309. Republic cannot invoke the alleged foreign lineage of its cigarette paper packaging, advertising and signage as evidence of non-infringement on the one hand, and on the other hand, assert the foreign country's blocking statute as a bar to producing documents in its control that would prove -- or disprove -- Republic's assertions. Thus, the interests of the United States outweigh the sovereign interests (if any) that France has in preventing discovery of the documents located at the French subsidiary.

### IV.

Lastly, we address the degree of specificity of HBI's request for documents. HBI requests that Republic obtain and produce from its French subsidiary "documents such as emails, prototypes, drawings, conceptual documents, presentations, and Power Point presentations that were used in or reveal the design process for both the European and US versions of the OCB Organic Hemp products sold by Republic and its related companies" (Jt. Stmt. at 6-7). HBI asserts these documents are "all available in either electronic form or as a limited number of physical prototype exemplars or mock-ups," which could be easily delivered or shipped (*Id.* at 7). Republic disagrees, arguing that HBI's request for "all documents" from foreign affiliates, including "every email, Power Point presentation, and other shred of paper regarding the development of both the package used in the United States (at issue) and the packages used in Europe (not at issue)," as well as "every package design that was considered, but not used" goes beyond the scope of Rule 26 and is not reasonable or proportionate to the needs of this case (Jt. Stmt. at 13-14).

We agree with Republic that HBI's request for discovery goes beyond what is relevant to prove its counterclaim for infringement of its trade dress or, conversely, to rebut Republic's claim for a declaration of non-infringement. Documents that were used in or reveal the design

10

process for the European version of the OCB Organic Hemp product (or designs that were never adopted) are not relevant to HBI's claim that the Republic's version in the United States infringes HBI's trade dress. HBI does not contend that Republic's French subsidiary derived its ideas for design and packaging from HBI's products. Rather, HBI contends that the Republic. version in the United States infringes its trade dress, and Republic's defense is that its design and packaging did not come from HBI, but instead came from the European version of the OCB Organic Hemp product which was already being sold in Europe. Therefore, we find that HBI is only entitled to obtain documents from Republic's French subsidiary that were used in or reveal the design process for the version of the OCB Organic Hemp products that Republic markets and sells in the United States.

## CONCLUSION

For the foregoing reasons, we hold that Republic must produce documents possessed by its French subsidiary (including emails, prototypes, drawings, conceptual documents, presentations, and Power Point presentations) that were used in or reveal the design process for the version of the OCB Organic Hemp products sold by Republic and its related companies in the United States.

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: September 27, 2017