UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REPUBLIC TECHNOLOGIES (NA), LLC, AND REPUBLIC TOBACCO, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> BBK TOBACCO & FOODS, LLP D/B/A HBI INTERNATIONAL, <br><br> Defendant. | No. 16 C 03401 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

A jury found that Defendant BBK Tobacco & Foods, LLP ("HBI") engaged in unfair competition and violated the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") in its packaging and promotional activities for its tobacco rolling paper products. Plaintiffs Republic Technologies (NA), LLC and Republic Tobacco, L.P. (collectively, "Republic") filed a post-trial motion for equitable relief, seeking, in part, a permanent injunction on various public statements that Republic claims are the basis for the jury's verdict. R. 815. HBI has agreed to entry of the injunctive order and to the majority of Republic's proposed language, however, some disputes regarding the specific language of the injunctive order remain. The Court now addresses the disputes and grants in part Republic's motion for equitable relief as to entry of a permanent injunctive order.

1

## BACKGROUND

During the jury trial in this case, Republic alleged that HBI engaged in false advertising under the Lanham Act, unfair competition, and violations of the IUDTPA. HBI counterclaimed that Republic infringed its copyrights and trade dress. R. 800, 802. The jury ruled for HBI on one of HBI's copyright infringement claims and one of its trade dress claims, and awarded HBI $979,620 in lost profits and $40,000 in statutory damages. R. 805. It also found that HBI did not engage in false advertising. *Id.* But the jury ruled for Republic on its unfair competition and IUDTPA claims against HBI. *Id.* The jury did not make any special findings as to which statement(s) by HBI created a likelihood of confusion or misunderstanding and thus violated the IUDTPA. *Id.*; R. 801 at 10. Because the jury was instructed not to consider the question of damages as to the unfair competition and IUDTPA claims (and plaintiffs cannot seek monetary damages under that statute, *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 866 (2008)), Republic was not awarded any monetary damages. R. 801 at 5; R. 805.

On July 30, 2021, Republic filed a post-trial motion for equitable relief arising out of HBI's violation of the IUDTPA and unfair competition, seeking a permanent injunction, disgorgement of profits, and attorneys' fees. R. 815. Since then, HBI has represented that it either had stopped making or would stop making the following statements with which Republic took issue during this case: (1) that HBI's RAW "Organic Hemp" papers are the "World's Only" or "World's First" organic hemp rolling papers; (2) that HBI contributes its funds or sales to a charitable entity called the

"RAW Foundation;" (3) that HBI's rolling papers are made with "natural hemp gum;" (4) that HBI's RAW rolling papers are "100% wind powered;" (5) that OCB Organic Hemp papers (Republic's products) are knock-offs, "RAWnabees," copies, or fake versions of RAW; (6) that HBI or Joshua Kesselman invented rolling paper pre-rolled cones; (7) that HBI uses the center of the stalk for its RAW Organic Hemp rolling papers; and (8) that RAW Organic Hemp rolling papers are "unrefined." R. 828 at 24–25; R. 891, 3/31/22 Tr. at 3–5; R. 901, 6/30/22 Tr. at 9. On May 26, 2022, during a status conference, the Court noted that the only remaining contested assertions were HBI's statements that its products were "made in Alcoy, Spain, the birthplace of rolling paper," and requested that the parties "report on whether they can agree to changed language on Alcoy and, if not, submit their separate proposals." R. 900; 901. The parties met and conferred and largely came to an agreement on the text of an injunctive order, but some differences remained. R. 907, 908. During a June 30 status, the Court ordered the parties to submit their draft agreed injunctive order (the "Order"), noting the areas of disagreement. R. 909; 910. The parties each submitted a redline version of a proposed (agreed) injunctive order, along with a short submission regarding the disagreements. R. 914; 915. According to these filings, the parties agree to most of the order's substance except for seven noted subjects, the most significant of which is the language regarding HBI's reference to "Alcoy, Spain" as the location of origin on its packaging.

## DISCUSSION

As an initial matter, the IUDTPA provides for injunctive relief as a remedy. *See* 815 ILCS 510/3. Further, a permanent injunction is appropriate here because Republic has demonstrated "(1) success . . . on the merits; (2) irreparable harm; (3) that the benefits of granting the injunction outweigh the injury to the defendant; and, (4) that the public interest will not be harmed by the relief requested." *Lacy v. Cook Cnty., Ill.*, 897 F.3d 847, 867–68 (7th Cir. 2018) (quoting *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist. (ADT I)*, 672 F.3d 492, 498 (7th Cir. 2012)).[1]

The jury returned a verdict on the merits against HBI on Republic's IUDTPA and unfair competition claims. Republic will not receive a monetary judgment, nor is there any mechanism which prevents HBI from further violating the IUDTPA. But a jury verdict finding a violation of the IUDTPA does not necessarily entitle a plaintiff to injunctive relief—it must also show a likelihood of future harm to itself absent injunctive relief. *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 790 F. Supp. 2d 708, 713 (N.D. Ill. 2011). Republic is likely to be harmed in the future absent an injunction because the Court finds that HBI's untruthful or at least misleading statements are likely to cause consumers to choose HBI's products over Republic's products on the basis of those statements (for example, that a portion of HBI's profits are donated to a non-existent charitable foundation, or that HBI's papers are made in a historical town by craftsmen). Moreover, it is not burdensome for HBI to conform its marketing

---

[1] The parties here agreed to entry of a permanent injunction, however, under Fed. R. Civ. P. 65(d), the Court must articulate its reasons for entry of the injunction.

activities to the law, and in fact, HBI has already voluntarily undertaken to discontinue most of the statements contained in the Order (and has largely agreed to the Order). The Court also finds that the injunction does not harm, but rather, furthers the public interest. Indeed, the enjoined statements are those which Republic argued at trial were misleading and gave HBI an unfair advantage in the marketplace. On the basis of these arguments, and without specifying what formed the basis of its verdict, the jury found HBI liable for violation of the IUDTPA. Thus, Republic's motion for entry of equitable relief is granted as to its request for a permanent injunction.

Turning to the language of the injunction, the Court accepts and adopts the language to which the parties agree in their proposed Order. And, as to their disputes, the Court will make factual findings based on the evidence presented at trial and consistent with the jury's verdict. *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 790 F. Supp. 2d 708, 715 (N.D. Ill. 2011).[2] In doing so, the Court "assesse[s] the credibility of the witnesses, including their respective demeanors while testifying." *Id.* The Court

---

[2] This case is very similar in posture to *LG Elecs.*, 790 F. Supp. 2d at 713, in which the jury returned a verdict for LG on its IUDTPA claim against Whirlpool, but against LG on its Lanham Act claim. The jury form, like here, was general and did not specify on which allegedly misleading statements the jury based its verdict. *Id.* So, in determining whether to grant injunctive relief on the IUDTPA claim, the Court made factual findings based on the evidence heard at trial. *Id.* There, the Court denied LG's proposed injunctive relief (enjoining Whirlpool from stating that its dryers used "steam") because the Court found that the "steam" statement was not false and thus was not likely to create a possibility of confusion or misunderstanding, and because LG did not show that it was likely to suffer irreparable harm. *Id.* Here, however, the Court finds that HBI's statements are both likely to mislead and likely to cause Republic to suffer future harm. Further, unlike the defendant in *LG*, HBI has largely agreed to entry of the Order.

then resolves the disputes with language that it finds to be "reasonable." 815 ILCS 510/3 (the IUDTPA provides that "[a] person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court considers reasonable."). We start with the most significant dispute, the "Alcoy, Spain" language.

### A. Alcoy, Spain Language

During trial, Republic presented evidence that HBI made written and oral claims on its packaging and in its promotions that its rolling papers are made by artisanal craftsmen in the city of Alcoy, Spain. For example, printed on the booklets of RAW rolling paper were the words, "Made in Alcoy, Spain, the birthplace of rolling paper."[3] *See* Pl.'s Ex. 500.33 at 4. Republic also presented evidence that HBI's paper is not actually made in Alcoy, Spain, but is bulk-produced in Saint-Giron, France by a supplier named Schweizer. Pl.'s Ex. 405; Trial Tr. at 1420, 1553. The paper is then cut and converted into booklets by a supplier named Iberpapel at a factory in the village of Benimarfull, Spain. *See* Santiago Sanchez Testimony, Trial Tr. at 791

---

[3] Other examples include: "RAW® paper made in Alcoy Spain," (Pl.'s Ex. 500.26); "Only RAW cones use genuine unrefined paper made in Alcoy, Spain," (Pl.'s Ex. 1 at 2); "In Alcoy, Spain there is still one rolling paper factory left, which can actually trace its roots back to the first rolling paper factory. This Alcoy factory produces many of our popular papers to date," (Pl.'s Ex. 15 at 4); "[M]ade in a small town in the mountains of Alcoy, Spain. Alcoy prides itself on its very long history of making rolling papers, and locals believe that their town is the birthplace of the modern rolling paper," (*id.* at 30); "Made in Alcoy Spain," (Pl.'s Ex. 500.34) and a stamp which stated the papers were "official" products of Alcoy, Spain (Pl.'s Ex. 500.33). On TikTok, YouTube and Instagram, HBI made statements reinforcing the claim that its papers are made in Alcoy, Spain. For example: "And the people of Alcoy, our craftsmen, . . ." (Pl.'s Ex. 362.10 at 4–5); and "I'm finally making paper in Alcoy," (Pl.'s Ex. 362.36 at 11).

(testifying that there are no paper makers or converters in the city of Alcoy); 793–94 (testifying that Iberpapel has a factory in Benimarfull, but no factory in Alcoy).

HBI now proposes a number of edits to Republic's proposed injunction that would permit it to continue labeling its products with references to Alcoy, Spain. Specifically, HBI wants to continue labeling its products with the following statements to which it converted during the pendency of this litigation: "Made in Spain. Alcoy, the birthplace of rolling paper," and "With genuine RAW® paper from Spain. Alcoy, the birthplace of rolling paper." R. 908 at 2.

In arguing that its statements regarding Alcoy are not misleading, HBI attempted to tie the village of Benimarfull to Alcoy as part of some sort of broader "Alcoy Region" of Spain. HBI introduced at trial a 1954 U.S. Army Corp. of Engineers map from the U.S. Library of Congress, which showed Benimarfull on the page of the map entitled, "Alcoy, Second Edition, AMS Sheet 821." R. 908; Trial Tr. at 1355–56; 1358. HBI's CEO, Joshua Kesselman, also testified that he had spent a lot of time in the area and that, from his personal experience, people in Benimarfull refer to themselves as "Alcoyanos," and that Benimarfull is close in proximity to the city of Alcoy. Trial Tr. at 1351; 1353–1354; 1360.

HBI's argument is not convincing. First, the paper itself is made in France, not Spain. And to the extent that the paper is cut, processed, and watermarked in Benimarfull, Spain, it is unclear from the evidence produced at trial whether it is part of a larger Alcoy region. For example, there is no indication that the U.S. Army map from nearly 70 years ago is a current representation of Spain's geography, nor

7

that the map is subdivided into broadly-recognized regions. Indeed, the map itself seems to be subdivided by an equal square grid, not by region, and the page of the map to which HBI cites does not itself state that it depicts an Alcoy region. R. 914-5.

Second, the testimony of Kesselman, a non-Spanish speaker, directly contradicted that of native Spaniard and rolling paper industry expert Santiago Sanchez. Sanchez stated that Benimarfull has nothing to do with Alcoy, and there is no larger Alcoy region. Trial Tr. at 840 ("Q. Okay. And is [Benimarfull] part of an Alcoy metropolitan area, or . . . Is Benimarfull a suburb of Alcoy? A. No, it doesn't work like that here in Spain. . . . It's a different village. . . . It does not . . . belong in any way to Alcoy. . . . It's what would be a different county, the equivalent of a different county, as you have in the U.S."), 845 (Benimarfull has "nothing to do with Alcoy").

Even if there were a widely-recognized Alcoy region in Spain of which Benimarfull is a part, HBI's reference to Alcoy in its advertising activities is misleading for two reasons. First, HBI's advertising implies that the paper itself is made in Alcoy, Spain, when it is actually made in France. Second, HBI's packaging and advertising does not and has not referred to the "region" of Alcoy—in the past, it specifically mentioned the "city of Alcoy" (Pl.'s Ex. 362.36 at 4–5), a paper factory in the city of Alcoy (not in use since 1986, Trial Tr. at 839) (*id.*), and the "town of Alcoy" (Pl.'s Ex. 362.14 at 4–6; Pl.'s Ex. 15 at 30). In short, HBI's advertising activities were a clear effort to take advantage of the city of Alcoy's history in the production of tobacco rolling papers, without HBI actually making its own paper there. With these

8

findings in mind, the Court now turns to each of HBI's requested edits regarding the Alcoy language.

### 1. Expansion of Footnote

First, HBI requests an addition to the current footnote which expressly allows HBI to represent that its rolling paper booklets are made in Spain. The footnote with HBI's proposed addition reads:

> With respect to topic 5(a-e), the Court and parties agree nothing in this Order shall prohibit HBI from representing that its rolling-paper-booklet products are made in Spain **or that its cone products are made in Indonesia, Moldova, or such other country where HBI's cone products are assembled with tips and glued. Nor shall this Order prohibit HBI from referring to existence of the Alcoy region of Spain or the fact that the town of Benimarfull is located in the region referred to as Alcoy and part of the judicial district named Alcoy**.

R. 914-2; R. 915-1 at 3 (HBI's proposed additions in bold).

It is not misleading to reference Spain as the location of the factory where the paper is made into booklets, or Indonesia and Moldova as where the cone products are assembled. Republic does not contest this, nor could it, because it is true. *See* Testimony of Don Levin, Republic Chairman, Trial Tr. at 392–393 ("Q: Okay. And let me just clarify, you don't have a problem with HBI saying that the booklets are made in Spain? A. No, I have no problem with that."). However, as discussed, HBI's attempts to tie Benimarfull to a larger "Alcoy region of Spain" are unsupported by the evidence and, as currently worded on HBI's packaging, still misleading. Accordingly, only the first sentence of HBI's proposed addition to this footnote should be implemented into the Order. The Court denies the rest.

9

### 2. "Bobbins" of Paper Language

Additionally, HBI requests an edit to subsection (5)(c) of the Order. The original language enjoins HBI from stating "[t]hat the paper used in RAW Organic Hemp rolling-paper is made in Spain." HBI proposes that subsection (5)(c) be adjusted to enjoin HBI from stating: "[t]hat the **bobbins of** paper used **to make** RAW Organic Hemp rolling paper **products are** made in Spain." R. 914-2; 915-1 at 4 (additions in bold).

The evidence at trial reveals that HBI's proposed statement is literally false because the bulk paper ("bobbins") used to make the RAW Organic Hemp rolling paper books are made in France. The bobbins of paper are then cut and formed into booklets in Spain. HBI's language is more specific and not foreseeably problematic. *See* Fed. R. Civ. P. 65(d) (requiring that injunctions state their terms specifically). HBI's proposed enjoined language for this subsection should be adopted into the final Order.

### 3. "Made in Alcoy Spain, the birthplace of rolling papers"

HBI also requests deletion of language enjoining it from stating "[t]hat RAW Organic Hemp rolling papers are made in Alcoy Spain, the birthplace of rolling papers." Citing Kesselman's testimony as an expert in the history of rolling paper, HBI argues that describing Alcoy as "the birthplace of rolling paper," on its packaging is not untrue, but rather a difference in opinion. But, as discussed above, it is not so much that the description of Alcoy as the "birthplace of rolling paper" is problematic— it is its placement directly after the statement that the rolling paper is made in Spain.

10

HBI's new language on its packaging, "Made in Spain. Alcoy, the birthplace of rolling paper," which merely switches two words and adds a period, does not change the plain intent and import of the statement, that the paper is made in the city of Alcoy, Spain. As acknowledged previously by this Court, this change is still misleading because it simply is not true. *See* 6/30/22 Tr. at 4 (describing the changed language as "silly," "nonsensical," and "an attempt to mislead."). HBI's requested deletion of "Made in Alcoy Spain, the birthplace of rolling papers" from the list of enjoined statements is denied.

### 4. Alcoy "Stamp" Language

HBI finally requests that subsection (5)(e), which currently states "HBI shall not use the Alcoy 'stamp,'" be edited to read "HBI shall not use on RAW Organic Hemp packaging, a 'stamp' including the use of the word Alcoy or referring to Alcoy." Because none of HBI's products are made in Alcoy, there is no need to limit this prohibition to RAW Organic Hemp packaging. However, more specificity about the stamp is acceptable. Therefore, (5)(e) shall read: "HBI shall not use on its packaging a 'stamp' including the use of the word Alcoy or referring to Alcoy."

### B. Addition of Language that HBI Does Not Consent that the Subject Statements Were False.

Moving on from the Alcoy dispute, HBI requests language making clear that, though it agrees to discontinue the listed statements in its promotions, packaging, and advertising, it does not consent that those statements were or are false. HBI's proposed edit states:

11

> HBI has since represented to the Court that it has stopped or will stop making the statements indicated above and, **without consenting to a finding that any of the subject statements was or is false**, HBI has agreed to entry of an Order as follows . . . .

R. 914-2; 915-1 at 2–3 (HBI's proposed edit in bold).

Here, there are no specific jury findings regarding the falsity of any of the subject statements. Certainly, falsity is not an element of an IUDTPA or unfair competition violation. R. 801 at 9–11 (instructing the jury that it only needed to find that HBI engaged in conduct which "creates a likelihood of confusion or misunderstanding" to find that HBI violated the IUDTPA and engaged in unfair competition). Second, the Court did not direct HBI to agree that any of the statements were false, but rather, to attempt to come to an agreement with Republic on the language of an injunction to resolve a portion of Republic's motion for equitable relief and in order to eliminate the need for the Court to review the entire evidentiary record and make factual findings about whether each individual statement violated the IUDTPA. HBI has done so by voluntarily agreeing to discontinue most of the listed statements. HBI, then, may properly refuse to admit that the subject statements were or are false. *See LG Elecs.*, 790 F. Supp. 2d at 716 (where a jury makes a general IUDTPA verdict, the jury does "not specify which practice or practices it found to create a likelihood of confusion or misunderstanding."). Thus, HBI's request for this language is granted.

### C. Removal of "Implies or Suggests" Language

HBI next requests that "implies or suggests" be removed from the following sentence:

> [HBI agrees to] permanently refrain from making any statement or communication, or engaging in any promotion or advertising activity that states, **implies, or suggests** [the listed language].

R. 914-2; 915-1 at 3 (HBI's requested deletion in bold). HBI argues that the "implies or suggests" language fails to "describe in reasonable detail . . . the act or acts restrained or required," as required by Fed. R. Civ. P. 65(d)(1)(C), provides too much room for interpretation, and would invite future motion practice. Republic, however, argues that deleting "implies or suggests" would open the door for HBI to continue making misleading statements in principle by using slightly different language, like "changing a punctuation mark here or a preposition there." R. 914. This would cause the injunction to be too narrow to be effective. *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 843 (7th Cir. 2012) (An "injunction must . . . be broad enough to be effective."). For example, though HBI would be enjoined from specifically stating that its papers are "made with natural hemp gum," it could still say that its "gum is made from natural hemp." R. 914.

Republic's fear is not unfounded. As discussed above, HBI has argued that changing the misleading statement, "Made in Alcoy, Spain, the birthplace of rolling paper" to "Made in Spain. Alcoy, the birthplace of rolling paper" is an acceptable remedy. R. 908. HBI's addition of a period to a misleading statement is an obvious attempt to continue implying that its rolling paper is made in Alcoy, something which is not true. HBI has also shown a proclivity to attempt to evade court orders.[4] The

---

[4] For example, HBI CEO Kesselman posted a video to his Instagram and TikTok accounts while the jury was deliberating regarding a subject which had been discussed at trial, in express disregard of this Court's order not to post on social media

13

Supreme Court and Seventh Circuit have affirmed broadly-worded injunctions against parties that have demonstrated a tendency to evade or violate court orders. *See Russian Media Group, LLC v. Cable America, Inc.*, 598 F.3d 302, 307 (7th Cir. 2010) (defendant had demonstrated tendency for unlawful conduct and for violating court's orders, which warranted a broadly-worded order); *Dexia Credit Loc. v. Rogan*, 602 F.3d 879, 885 (7th Cir. 2010) (district court properly exercised its discretion by issuing broad injunction due to the defendant's elaborate attempts to evade creditors); *see also N.L.R.B. v. Express Pub. Co.*, 312 U.S. 426, 435 (1941) ("A federal court has broad power to restrain acts . . . whose commission in the future unless enjoined, may fairly be anticipated from the defendant's conduct in the past."). Therefore, in light of its prior conduct, HBI should be enjoined from making the express statements listed *and* those that imply or suggest the same, and HBI's requested edit is denied.

### D. Footnote Regarding the "Made from Hemp" Language

Next, HBI requests removal of the words "or contains" from the following enjoined statement:

> That RAW Organic Hemp rolling papers are made with natural hemp gum, or that the adhesive used in RAW Organic Hemp rolling papers is made from **or contains** hemp.

---

about any subject discussed at trial. R. 845. He non-credibly argued that he did not think the post violated the order, even though he was heavily involved and present during the entire trial. *Id.* Kesselman's conduct resulted in sanctions which would have been much more severe if his posts had been viewed by the jury. *Id.*

14

R. 914-2; 915-1 at 3 (HBI's proposed deletion in bold). HBI also requests the addition of a footnote which states:

> With respect to topic 3, nothing in this Order shall prohibit HBI from truthfully stating the content of the gum used with its rolling papers including, for instance, potential infusion of the gum with compounds such as "CBD" that is permitted under State and Federal law and that may be derived from hemp.

*Id.*

Grammatical issues aside, there is nothing problematic about clarifying that HBI may make truthful statements regarding infusion of its rolling papers with CBD or other legal compounds that are derived from hemp. Republic does not suggest otherwise. Thus, the substance of this footnote should be incorporated into the final injunction.

### E. Removal of Agreement to Limit Advertising to Permissible Opinion or Verifiable Factual Statements

HBI next requests deletion of the following sentence:

> HBI further agrees that all advertising or promotional statements made after June 30, 2022 shall either clearly constitute permissible opinion (e.g., that something is "great tasting") or be factual statements for which HBI maintains tangible, objective, verification. R. 828 at 25-26.

R. 914-2; 915-1 at 5. Notwithstanding the fact that HBI itself promised this exact language in its original response brief (R. 828 at 25–26), this is a fair statement of the law. *See Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 907 (7th Cir. 2007) (making materially false statements of fact in advertising is unlawful); *Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 934 (N.D. Ill. 2016) ("puffery," i.e., vague claims or opinions in advertisements that are "incapable of being proved or disproved"

are not unlawful); *see also Bates v. State Bar of Ariz.*, 433 U.S. 350, 383 (1977) (noting that restrictions on false advertising are "clearly permissible limitations" because "the public and private benefits from commercial speech derive from confidence in its accuracy and reliability."). Though HBI argues that this sentence was only meant to be a "general aspirational statement" (R. 914-3 at 5), it should not be objectionable to agree to follow the law. This language should remain, with an updated date reflecting the entry of the Order.

### F. Explanatory Footnote Regarding the Schedule for HBI's Implementation of the Order

HBI wants to include a footnote clarifying the schedule for implementation of the Order. Essentially, HBI promises to implement the Order in steps, with it executing the changes for its top ten items in dollar sales and top ten items in total number sold within 30 days of entry of the Order. HBI wants to clarify that:

> To the extent items are ranked in the top ten in both dollar sales and volume sales that shall not result in including another item in the initial group of items (i.e. if the same 10 items are the "top ten" in terms of both dollar sales and volume sales, only ten items will be included). This same interpretation shall apply throughout this order.

R 914-2; 915-1 at 5. Though perhaps awkwardly worded, this language is not objectionable and clarifies the parties' understanding of how HBI will implement the Order. This footnote may be included in the final Order.

### G. Removal of Requirement that HBI Provide Notice of the Order to Its Customers

Finally, HBI requests removal of the following sentence:

Within 10 days of the entry of this Order, HBI shall provide actual notice of this Order to its wholesalers, distributors, and other customers and

16

> instruct them to refrain [sic] engaging in any of the above prohibited marketing and promotional activities.

R 914-2; 915-1 at 6. Republic argues for the inclusion of this language because it will allegedly protect HBI's wholesalers, distributors, and other customers from "inadvertently incur[ring] liability for propagating HBI's lies and misrepresentations." R. 914 at 13. HBI, meanwhile, argues that requiring it to notify its re-sellers of the injunction and instruct them to follow it may "chill" sales of HBI products, prompt the return of products already sold, and create the erroneous impression that these parties are subject to the injunction.

It is true that HBI's customers cannot be enjoined under Fed. R. Civ. P. 65.2 because Republic has not shown that they have any sort of privity with HBI or act "in active concert or participation with" HBI. *S.E.C. v. Homa*, 514 F.3d 661, 674 (7th Cir. 2008); *see also Good Earth Lighting, Inc. v. New Chao Feng Indus. Co.*, No. 98 C 1442, 1999 WL 58555, at *2 (N.D. Ill. Feb. 3, 1999) ("[W]e could only enjoin defendants' customers from selling goods they purchased from defendants if the customers knew that defendants were enjoined from selling to them and they tried to help defendants evade the injunction. The Court cannot . . . enjoin non-parties from selling goods they innocently purchase or that they currently possess."). Contrary to Republic's argument, providing notice of the injunction to these third parties could actually further expose them to liability. *See Stotler and Co. v. Able*, 870 F.2d 1158, 1164 (7th Cir. 1989) ("[O]rdinarily a court may find a nonparty in contempt [for violating an injunction] if that person has 'actual knowledge' of the court order [among other requirements]."). This sentence shall not be included in the final Order.

17

## CONCLUSION

For the foregoing reasons, Republic's motion for equitable relief (R. 815) is granted in part as to the requested permanent injunction, subject to the revisions addressed in this Opinion. The parties are ordered to incorporate the Court's holdings into the text of a final injunctive order and submit it for entry on the docket. The Court will consider Republic's requests for disgorgement and attorneys' fees upon renewed briefing. The Court therefore denies the remainder of Republic's motion as moot.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: December 6, 2022