UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REPUBLIC TECHNOLOGIES (NA), LLC, and REPUBLIC TOBACCO, L.P., <br><br>Plaintiffs, <br><br>v. <br><br>BBK TOBACCO & FOODS, LLP, d/b/a HBI INTERNATIONAL, <br><br>Defendant. | No. 16 C 03401 <br><br>Judge Thomas M. Durkin |

## MEMORANDUM OPINION AND ORDER

The motion now before the Court stems from a jury's finding that Defendant BBK Tobacco & Foods, LLP ("HBI") engaged in unfair competition and violated the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") in its packaging and promotional activities for its RAW® Organic Hemp branded tobacco rolling paper products. After lengthy proceedings regarding post-trial equitable relief, Plaintiffs Republic Technologies (NA) LLC and Republic Tobacco, L.P. (collectively "Republic") have filed a renewed motion for disgorgement, prejudgment interest, and attorneys' fees. R. 923. That motion is granted as to a portion of the attorneys' fees but is otherwise denied.

## Background

During the jury trial in this case, Republic alleged that HBI, its competitor in the tobacco rolling paper industry, engaged in false advertising under the Lanham Act, unfair competition, and violations of the IUDTPA. HBI counterclaimed that

1

Republic infringed its copyrights and trade dress. R. 800, 802. On June 25, 2021, the jury returned its verdict. R. 805. The jury ruled for HBI on one of its copyright infringement claims and one of its trade dress claims against Republic and awarded HBI $979,620 in lost profits and $40,000 in statutory damages. *Id*. With respect to Republic's claims against HBI, the jury found that HBI did not engage in false advertising under the Lanham Act, but that HBI had engaged in unfair competition under Illinois common law and violated the IUDTPA. *Id*. Because neither party requested a special verdict form, the jury did not make any special findings as to which statement(s) by HBI created a likelihood of confusion or misunderstanding and thus violated the IUDTPA, nor did it specify why it found no Lanham Act violation.[1] *Id*.; R. 801 at 10. Because the jury was instructed not to consider the question of damages as to the unfair competition and IUDTPA claims (and plaintiffs cannot seek monetary damages under that statute, *see Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 866 (2008)), Republic was not awarded any monetary damages. R. 801 at 5; R. 805.

Republic filed a post-trial motion for equitable relief, seeking a permanent injunction on certain of HBI's advertising statements that Republic claimed were the basis for the jury's verdict, as well as disgorgement of profits and attorneys' fees. R. 815. Specifically, Republic took issue with the following statements on which it had also based its Lanham Act false advertising claim: (1) that HBI's rolling paper is

---

[1] A request for a special verdict form on these issues, if made, would have greatly simplified the post-trial proceedings in this case.

2

"made in Alcoy, Spain, the birthplace of rolling paper;" (2) that HBI's RAW "Organic Hemp" papers are the "World's Only" or "World's First" organic hemp rolling papers; (3) that HBI contributes its funds or sales to a charitable entity called the "RAW Foundation;" (4) that HBI's rolling papers are made with "natural hemp gum;" (5) that RAW rolling papers are "100% wind powered;" and (6) that OCB Organic Hemp papers (Republic's products) are knock-offs, "RAWnabees," copies, or fake versions of RAW. R. 801; R. 828 at 24–25; R. 891 at 3–5; R. 901 at 9. After multiple rounds of briefs which are not at issue here, HBI agreed to entry of an injunction. However, some disputes regarding the specific language of the injunction remained.

On December 6, 2022, this Court issued a Memorandum Opinion and Order which made factual findings, addressed the parties' remaining disputes concerning the language of the injunction, and granted in part Republic's motion for equitable relief. R. 916. Specifically, the Court made in-depth factual findings regarding HBI's claim that its rolling paper is made in Alcoy, Spain and held that HBI made untrue claims that its "papers are made in a historical town [Alcoy] by craftsmen." R. 916 at 6–8. Up to that point, the Court had focused solely on issues pertaining to the permanent injunction. The Court requested renewed briefing on Republic's requests for disgorgement and attorneys' fees. Republic's renewed motion is now before the Court. R. 923.

## Discussion

I.  **Disgorgement**

3

Republic first seeks the equitable remedy of disgorgement of profits. Arguing that all of HBI's RAW brand profits from 2009 until present day resulted from HBI's unfair competition and deceptive business practices, Republic requests the disgorgement of every cent of profit from HBI's RAW brand during that time period—over $34 million. This extraordinary request, however, is not supported by adequate evidence, nor is it appropriate considering the other factors of the case.

"[E]quity courts have routinely deprived wrongdoers of their net profits from unlawful activity." *Liu v. SEC*, 140 S. Ct. 1936, 1942 (2020) (collecting examples that this remedy goes by the name of "disgorgement," an "accounting," or an "accounting for profits"). Regardless of what the remedy is called, it rests on the basic principle that "[i]t would be inequitable that a wrongdoer should make a profit out of his own wrong.'" *Id.* at 1937 (quoting *Root v. Railway Co.*, 105 U.S. 189, 207 (1888)). But a district court is not required to award disgorgement upon a violation and should instead consider the equities in light of the unique circumstances of the case. *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1096 (7th Cir. 1994) (upholding district court's refusal to award disgorgement of profits related to Lanham Act false advertising violation); *S.E.C. v. Collins*, No. 01 C 3085, 2003 WL 21196236, at *5 (N.D. Ill. May 21, 2003) ("The district court has broad discretion in deciding whether to award disgorgement at all.").

The IUDTPA does not allow for disgorgement as a remedy. The text of the IUDTPA provides only for injunctive relief, and if the violation was willful, attorneys' fees. There is at least one Illinois case that has specifically held that a "[p]laintiff

4

cannot seek . . . an accounting of defendant's business under the Deceptive Trade Act." *Empire Home Servs., Inc. v. Carpet Am., Inc.*, 274 Ill. App. 3d 666, 670–71 (1995) (reversing dismissal of IUDTPA claim but striking requests for damages and an accounting). The IUDTPA does, however, contain a provision affirming that the IUDTPA remedies are additional to any other remedies available against the same conduct under the common law. 815 ILCS 510/3. And here, the jury also found that HBI committed common law unfair competition, which may carry with it the right to disgorgement, though the parties have not cited, and this Court could not find, an example in Illinois in the last 75 years. *See Nestor Johnson Mfg. Co. v. Alfred Johnson Skate Co.*, 313 Ill. 106, 112, 126 (1924) (affirming an equitable decree that "awarded an accounting . . . for all profits that accrued" to a manufacturer whose deceptive practices "amount[ed] to unfair competition."); *Ferrocart Corp. of Am. v. Johnson Labs.*, 50 F. Supp. 151, 152 (N.D. Ill. 1943) (discussing the availability and amount of an accounting as a remedy for patent and unfair competition violations).

Assuming that disgorgement is an available remedy under the Illinois common law, but absent guidance from Illinois courts, the Court turns to the Restatement (Third) of Unfair Competition for guidance. *Continental Vineyard, LLC v. Vinifera Wine Co., LLC*, 973 F.3d 747, 758–59 (7th Cir. 2020) (holding that the district court did not abuse its discretion in referring to the Restatement of Unfair Competition in the absence of Michigan state law on the availability of disgorgement). Under the Restatement, disgorgement is appropriate only when (1) "the actor engaged in the conduct with the intention of causing confusion or deception," and (2) "the award of

5

profits is not prohibited by statute and is otherwise appropriate" in light of all of the factors of the case. Restatement (Third) Unfair Competition, § 37(1) (1995); *Continental Vineyard*, 973 F.3d at 759. If disgorgement is proper and a "substantial factor in producing a sale," the wrongdoer is liable for "the net profits earned on profitable transactions resulting from the unlawful conduct." Restatement at § 37(1), cmt. d.

### A. There is No Proof the Contested Statements Were a Substantial Factor in Producing Sales.

Though Republic claims that all of HBI's profits from 2009 to present day resulted in part from its false statements, Republic does not provide sufficient proof for this claim. R. 923 at 11. Instead, it merely argues that the false statements were "central to the brand identity," and thus must have been a "substantial factor" in HBI's sales. *Id.* Republic hinges its argument on this Court's statement, in granting the agreed injunction, that HBI's false and misleading statements "are likely to cause consumers to choose HBI's products over Republic's products." R. 916 at 4. But first, that finding is not directly on point—it looked at "likely" future harm to Republic, not *actual proof* of causation of HBI's past profits. And second, that finding was made in the context of entry of an *agreed* injunction. Here, since the appropriateness of the requested relief is disputed, Republic must provide evidentiary support for its contentions.

Republic did not provide any evidence at trial that the contested statements actually influenced consumer buying decisions or generated profits. Indeed, Republic failed to present evidence showing that any of the contested statementsinfluenced a

6

single consumer's purchasing decision. As the Seventh Circuit explained in an unfair debt collection practices case in which consumer confusion is an element of proof, a "plaintiff must come forward with evidence beyond . . . his own self-serving assertions" to establish impact on consumers. *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 415 (7th Cir. 2005). Indeed, Republic could have provided survey data or consumer testimony, but did not. *See* R. 851 at 1115–16 (Republic General Counsel Seth Gold's testimony that Republic did not have evidence from any consumers that HBI's statements affected consumer purchasing decisions); *see also Durkin*, 406 F.3d at 415 (The "need for additional evidence on consumer confusion . . . might be met through the use of a carefully designed and conducted consumer survey.").

Republic mainly points to the testimony of HBI's own witnesses that the purpose and effect of the "RAW Foundation" promotion and charitable giving campaigns[2] was to drive more sales, increase brand awareness, and enhance brand loyalty. R. 853 at 1546–53 (HBI's Chief Operating Officer, Matthew Colvard, agreeing that giving back "helps build brand loyalty" and "sell more products."); *id.* at 1653 (HBI's marketing expert, Dr. Chernev, explaining that charitable giving by a brand leads consumers to "perceive the products of that brand as working better, lasting longer, to be superior in performance"); R. 855 at 2173, 2177 (HBI's officer of charitable giving, Tracy Boak, testifying that the typical purpose and effect of promising donations from purchases is to drive purchases). But though there was no official "Raw Foundation" entity, HBI did indeed donate moneys to charities and

---

[2] This was just one of the contested statements.

conduct charitable events. *See* R. 853 at 1546–50. Additionally, statements by a company that it believes its advertising is important and would generate profits "is a truism," but is not evidence that the advertising actually had that effect. *Ill. Tool Works, Inc. v. Rust-Oleum Corp.*, 955 F.3d 512, 515 (5th Cir. 2020).

Republic finally points to the parties' competing damages experts who attributed certain amounts of HBI's profits to the challenged statements. R. 855 at 2191, 2195–96, 2240. But HBI's expert admitted that he did not review any consumer data or have any background in understanding consumer behavior. *Id.* at 1241. Republic's expert also admitted that he did not know "how much of HBI's profits are attributable to the challenged statements;" did not "have any basis for adjusting [his] profit opinion to account for the fact that the jury might accept some of the statements, but not all of them, as false advertising;" and did not "have any basis for an opinion that any of the challenged advertisements actually increased HBI's profits." R. 851 at 1171–72. Both experts, whose conclusions and methodologies were not based in any objective, measurable evidence, provided inadequate proof that any particular statement impacted a sale.

The lack of evidence that the wrongful conduct was a "substantial factor" in producing sales is "fatal" to an award of disgorgement. *See Ill. Tool Works, Inc.*, 955 F.3d at 515 (vacating disgorgement award where plaintiff failed to present evidence at trial that "link[ed] [the defendant]'s false advertising to its profits, that permit[ted] a reasonable inference that the false advertising generated profits, or that show[ed]

8

that even a single consumer purchased [the product] because of the false advertising.").

HBI argues that the jury's verdict further confirms that Republic did not meet its burden of proof on causation. The jury found for Republic on its IUDTPA and unfair competition claims (which had the same elements of proof), but against Republic for its false advertising claim under the Lanham Act. R. 805. The IUDTPA and Lanham Act require proof of similar elements, but the Lanham Act additionally required Republic to prove the deception "was likely to influence the purchasing decisions of consumers," while the IUDTPA did not. R. 801 at 3, 9–11. The Lanham Act count also required, unlike the IUDTPA, that the deception "actually misleads a customer." Therefore, according to HBI, the verdict implies that the jury found that the statements at issue in this case either did not or were not likely to influence consumers' purchasing decisions. But this is reading too much into the jury's verdict. The jury could have found, for example, that HBI did not make false statements (as required under the Lanham Act) but had made statements that "create[d] a likelihood of . . . confusion," (as required under the IUDTPA). *Id.* The Court will not speculate on the basis of the jury's verdict without a special finding, so there is nothing in the jury's verdict that informs the Court's decision on disgorgement.

### B. The Factors of the Case Do Not Support Disgorgement

Even if Republic could establish that HBI's IUDTPA and unfair competition violations were a substantial factor in its profits, the factors the Court should consider in determining the suitability of a disgorgement award do not weigh in favor of

9

granting relief. Under the Restatement (Third) of Unfair Competition § 37(2), a court should only award disgorgement when the actor engaged in the conduct in bad faith and when the award of profits is not prohibited by statute and is otherwise appropriate in light of all of the factors of the case. The factors listed by the Restatement include (a) the degree of certainty that the actor benefitted from the unlawful conduct; (b) the relative adequacy to the plaintiff of other remedies; (c) the interests of the public in depriving the actor of unjust gains and discouraging future unlawful conduct; (d) the role of the actor in bringing about the deceptive marketing; (e) unreasonable delay by the plaintiff in bringing suit; and (f) any related misconduct on the part of the plaintiff. Setting aside the question of whether HBI acted willfully or in bad faith (*see* section II, *infra*), the majority of the factors of the case do not weigh in favor of granting Republic's request for disgorgement.[3]

First, as discussed, there is not sufficient evidence that HBI reaped profits because of the unlawful conduct (factor (a)). There is a lack of evidence that a single consumer purchased HBI's RAW Organic Hemp products because of the challenged statements. Consumers could have purchased the RAW brand products because of the unusual brand name, the products' function (i.e., the way it tastes or the rate it

---

[3] There are only two factors, factors (d) and (e), on the pro-disgorgement side of the ledger. HBI and its CEO, Joshua Kesselman, were undeniably directly involved in the promotion of the deceptive marketing. Additionally, this Court already found, in denying HBI's motion for judgment as a matter of law on its laches defense, that HBI had not proven that Republic unreasonably delayed in bringing suit. *See* R. 888 at 9–10. All other factors weigh against disgorgement.

10

burns), or because of CEO Joshua Kesselman's social media presence. But that is merely speculation, just as attributing sales to the challenged statements would be.

As to factor (b), the sufficiency of other remedies, Republic has already obtained broad injunctive relief. Republic argues that because the jury was not able to award any monetary remedy under the IUDTPA, the injunctive relief the Court granted was inadequate. But where there is a lack of evidence that the statements affected anyone's purchasing decisions, injunctive relief is an adequate remedy.

And because Republic seeks in its request for disgorgement the entirety of HBI's profits over a fourteen-year period, the Court also notes the risk of a windfall recovery to Republic and of HBI's potential liability for multiple recoveries. There are 22 hemp-based competitor rolling paper products on the market.[4] R. 928-1. Republic has no particular claim to all of HBI's profits in light of the apparently large number of potential competitors, all of whom may have suffered sales losses because of HBI's misleading statements, and therefore would then rightly be entitled to a portion of those profits. There are numerous examples in which courts have refused to award disgorgement in similar circumstances. *BASF*, 41 F.3d at 1096 ("[A]n accounting may overcompensate for a plaintiff's actual injury and create a windfall judgment at the plaintiff's expense," (quoting *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532,

---

[4] Republic claims the relevant market is not hemp-based tobacco rolling papers (in which there are 22 competitor brands), but *organic* hemp-based tobacco rolling papers (in which the only competitors are Republic and HBI). The Court is not convinced that other hemp-based tobacco rolling papers that do not have the word "organic" on them could not fairly be characterized as a competitor product. Again, there is no evidence (survey evidence or otherwise) that proves consumers' purchasing choices were based on whether hemp tobacco rolling paper was *organic*.

11

1540 (2d Cir. 1992))); *see also Oshana v. Coca-Cola Co.*, No. 04 C 3596, 2005 WL 1661999, at *10 (N.D. Ill. July 13, 2005) ("By seeking disgorgement of profits beyond those gained at her expense, [the plaintiff] essentially seeks recovery for Coca-Cola's hypothetical liability to other consumers."). The Restatement also acknowledges that a disgorgement award "is less likely to be appropriate" in the case of deceptive marketing because "[a] defendant who falsely describes the qualities of its own product may be unjustly enriched by the deception, but often no specific competitor will have a compelling claim to the defendant's profits. There is also a risk of multiple recoveries of the same profits." Restatement § 37 at cmt. f. To award Republic the entirety of HBI's profits, then, would overcompensate Republic and put HBI at risk of multiple recoveries of the same profits.[5] In such circumstances, the injunction is an adequate remedy.

Factor (c) also does not support disgorgement as a remedy. The injunctive relief already granted will sufficiently protect consumers from the misleading statements. Republic argues that enjoining future use of the misleading statements does not sufficiently deter HBI from engaging in similar misconduct. True, courts sometimes grant requests for disgorgement for the deterrent effect, even where disgorgement is inappropriate as compensation. *Id.* at cmt. b ("Thus, courts gradually adopted the view that in an appropriate case an accounting of the defendant's profits could be

---

[5] Even if Republic proposed disgorgement of just a portion of profits based on market share, disgorgement would still be inappropriate because of the fundamental deficiency of proof that any false statements affected a purchase. See Section I.A., *supra.*

12

awarded . . . to deter future infringement. This perspective emphasizes the gains earned by the defendant rather than the losses incurred by the plaintiff."); *BASF*, 41 F.3d at 1095 ("[D]isgorgement is most appropriate when . . . the defendant would not otherwise be deterred."). But Republic has admitted that it cost HBI money to bring itself into compliance with the injunction by removing numerous marketing statements from all packaging, marketing, and promotional materials for upwards of 600 items. *See* R. 917 at 9; R. 919 at 8. Though it has not owed damages, HBI has designed, implemented, and manufactured new packaging for a huge number of products, revised advertisements and marketing materials, and sold off or destroyed existing inventory. *See generally* R. 917. All of this, some of which was ordered on a more accelerated timetable than HBI wanted, resulted in hard cost expenses that would not have been incurred but for the injunction. This factor, too, counsels against disgorgement of profits.

And finally, regarding factor (e), Republic is not a completely innocent party in the matter. The jury specifically found that Republic willfully infringed HBI's trade dress and copyright in its competitor OCB product. R. 805. Republic's infringement and HBI's deceptive marketing are directly intertwined—they occurred in the promotion of competing products by competing companies. This is yet another reason why it would be inappropriate for a willful infringer to then obtain an award of $34

13

million in profits from the very party it infringed even though that competitor engaged in its own misconduct.[6, 7]

## II. Attorneys' Fees

The IUDTPA provides that costs, attorneys' fees, or both may be assessed against the defendant "if the court finds that [defendant] has willfully engaged in a deceptive trade practice." 815 ILCS 501/3. Willful conduct is defined as conduct that is "voluntary and intentional, but not necessarily malicious." *Chicago's Pizza*, 384 Ill. App. 3d at 868; *see also Neuros Co., Ltd. v. KTurbo, Inc.*, 08-CV-5939, 2013 WL 1706368, at *4 (N.D. Ill. Apr. 17, 2013) (continued attempts to deceive customers sufficient to justify fees).

This Court has already found that HBI acted with willfulness as to its Alcoy statements. In the December 2022 Opinion, this Court found that HBI's advertising activities about Alcoy "were a clear effort to take advantage of the city of Alcoy's history in the production of tobacco rolling papers, without HBI actually making its own papers there." R. 916 at 8. Moreover, when HBI—a full year after trial—claimed that any problems with its Alcoy statements could be solved by essentially rearranging the punctuation of its previous statements, this Court found that it was

---

[6] The Court further takes note of HBI's claim that Republic engaged in inappropriate conduct by flaunting the issuance of the injunction. In the same vein, HBI may seek to use this Order in its marketing. The parties should just compete fairly and not use the Court's Orders as yet another marketing device. And although HBI argues that Republic's use of HBI's "RAW" brand name in the title of a PR website infringes its trademark, this alleged infringement is not the subject of this lawsuit.

[7] Because disgorgement will not be awarded, the Court need not address Republic's request for interest.

14

"an attempt to mislead." R. 910 at 4-5. HBI should therefore be liable for Republic's reasonable attorneys' fees accrued as to the "Alcoy" deceptive language issue.[8] This can easily be calculated with regard to the preparation of post-trial briefing on the Alcoy language. Recognizing that a large portion of Republic's attorneys' time was spent on other statements and on defending its own infringing conduct, Republic should further confer with HBI to calculate an appropriate portion of attorneys' fees attributable to the time spent during the other parts of the case on the Alcoy issue.[9]

## Conclusion

For the foregoing reasons, Republic's motion for disgorgement, interest, and attorneys' fees is denied, except that HBI will be liable for Republic's attorneys' fees accrued regarding the "Alcoy" deceptive language. Within 30 days, Republic is directed to enter a fee petition and supporting documentation as to its calculated amount of attorneys' fees.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: April 19, 2023

---

[8] It is not necessary or efficient to make further factual findings as to the falsity of other statements.

[9] It is hoped that this aspect of the lengthy litigation between the parties does not launch even more satellite disputes. If the dispute regarding attorneys' fees becomes too contentious, the Court will likely appoint a special master to resolve it, with the parties equally splitting the special master's fees.